UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LARADO DIVISION

**CRYSTAL FLORES, on behalf of her child, O.M., a minor,**

*Plaintiffs,*

v.

**UNITED INDEPENDENT SCHOOL DISTRICT through its Board of Education, ADRIANA MARIEL RULLAN,**

*Defendant.*

CASE NO.

JURY TRIAL DEMANDED

## COMPLAINT

### I.   INTRODUCTION

This is an action arising from sexual exploitation of a minor occurring at Antonio Gonzalez Middle School within the United Independent School District. Plaintiff is seeking damages for Defendant's violation of Title IX of the Educational Amendments Act of 1972 and Constitutional violations under 42 U.S.C. §1983.

### II.   PARTIES

1.   O.M. was a student at Antonio Gonzalez Middle School in the United Independent School District in Texas. Plaintiff at all times material to this litigation has been, and is presently, a minor child.

1

2. The Complaint is filed by and through his mother, Crystal Flores ("Flores"), with the consent of O.M.

3. Defendant United Independent School District ("UISD") is a public school system located in Laredo, Texas. UISD receives federal funds as a public institution and is governed through its Board of Education. UISD has received federal funding at all times relevant to this litigation.

4. Defendant Adriana Marie Rullan ("Rullan"), was at all times relevant to this litigation a teacher for the United Independent School District. Rullan is a resident of the State of Texas.

### III.   JURISDICTION & VENUE

5. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

6. Defendant UISD conducts business within the State of Texas.

7. Defendant Rullan resides in the State of Texas and was employed by UISD.

8. Venue in this action is properly in the Southern District of Texas because the events relevant to this action occurred primarily within the geographical confines of the Southern District of Texas.

## IV.     FACTUAL ALLEGATIONS

9. At all times relevant to this litigation, O.M. was a student at Antonio Gonzalez Middle School ("AG Middle School") within the United Independent School District ("UISD").

10. Defendant Adriana Mariel Rullan ("Rullan") was employed by UISD at AG Middle School as a teacher.

11. O.M. met Rullan on the AG Middle School campus in her role as a teacher for the district.

12. The relationship between Rullan and O.M. began in May 2023.

13. Rullan and O.M. became sexually involved in 2023.

14. Rullan has sexual relations with O.M. within her classroom at AG Middle School on multiple occasions.

15. At an unknown time during O.M. and Rullan's sexual relationship, Rullan notified O.M. that she believed she was pregnant with his child.

16. In early November of 2023, Plaintiff and her husband started becoming suspicious of O.M.'s behavior.

17. O.M. suddenly had money on hand and was making pricey purchases for a child his age.

18. On November 25, 2023, Plaintiff's husband demanded that O.M. turn over his phone so that they can further investigate.

19. Plaintiff and her husband immediately reviewed O.M.'s CashApp, a peer-to-peer money transferring service, and noticed O.M. had received multiple cash transactions from Rullan.

20. After becoming aware of the money transfers, Plaintiff searched for Rullan's contact information within O.M.'s mobile phone.

21. Plaintiff found Rullan's contact information which had a pink heart next to her name.

22. Plaintiff found pictures of O.M. and Rullan together, as well as pictures that Rullan sent O.M. of herself.

23. As Plaintiff and her husband proceeded through O.M.'s phone, O.M. became very upset and left the room.  O.M. then proceeded to remove a knife from Plaintiff's knife drawer and ran out of the house.

24. Plaintiff and Plaintiff's husband went looking for O.M. but were unsuccessful.  Plaintiff left her husband and went back to the house to contact the police while her husband continued to search for O.M.

25. On November 25, 2023, immediately after uncovering the information of the relationship, Plaintiff and Plaintiff's husband contacted Rullan and questioned her relationship with O.M.

26. Rullan stated that she was O.M.'s teacher.

27. Upon hearing that O.M. had gone missing, Rullan expressed her want to help Plaintiff find O.M. and requested a visit to their home so that she could explain her text messages and money transactions sent to O.M. Plaintiff declined and terminated the call.

28. Plaintiff's husband located O.M and returned him to the home where the police questioned O.M.

29. Later in the day on November 25, 2023, Rullan continued to contact Plaintiff via text, requesting that she come to Plaintiff's home to explain herself.

30. Plaintiff eventually agreed and provided Rullan with her home address. Plaintiff recorded the visit. During the visit, Rullan denied having sexual intercourse with O.M.

31. On November 27, 2023, Plaintiff contacted AG Middle School and requested to speak to principal, Mrs. Araceli Garza ("Principal Garza"), regarding an urgent matter.

32. Later that afternoon, Plaintiff met with Principal Garza and inquired of the sexual misconduct that occurred between Rullan and her son, O.M. on the UISD campus as well as outside of UISD.

33. On November 28, 2023, Seargent Rodriguez of the Laredo Independent School District Police Department requested Plaintiff take O.M. to the Children Advocacy Center of Laredo Webb County ("CAC") for an interview. It was at this

time that Plaintiff was informed that Rullan had in fact engaged in sexual misconduct with her minor son, O.M., beginning their relationship on May 8, 2023.

34. Rullan managed to engage in sexual intercourse with O.M., a minor student, at least twelve times while school was in session.

35. O.M. inform CAC that he had contemplated committing suicide since the date the relationship was discovered.

36. After the interview with the CAC, CAS suggested that Plaintiff immediately take O.M. to Laredo Medical Center Hospital for a mental evaluation.

37. Laredo Medical completed their medical examination same day. As O.M. seemed to be experiencing signs of emotional trauma, Laredo Medical advised Plaintiff that O.M. needed to be seen by Child Adolescent and Parent Services ("CAPS").

38. On November 29, 2023, Plaintiff took O.M. to CAPS and provided them with the referral and examination write-up from Laredo Medical Center. CAPS questioned O.M. regarding the incident surrounding his relationship with Rullan and his emotional state as a result thereof.

39. Based on O.M.'s responses and suicidal thoughts, O.M. was immediately admitted to the Laurel Ridge Treatment Center ("Laurel Ridge") where he remained for the next eight (8) days.

40. On November 29, 2023, Plaintiff forwarded Rodriguez the recording of the November 25, 2023 conversation between Plaintiff Rullan. Plaintiff also provided Rodriguez with a letter from Rullan that she had written to O.M.

41. Within the letter, Rullan confessed to having a nine (9) month relationship with O.M.

42. On December 6, 2023, O.M. was discharged from Laurel Ridge and diagnosed with Major Depressive Disorder ("MDD").

43. On December 12, 2023, O.M. had a follow-up appointment with CAPS Psychiatrist Dr. Grecia Sanchez ("Dr. Sanchez"). O.M. had not been sleeping and had lost his appetite. As a result, Dr. Sanchez prescribed O.M. medication to help combat his emotions.

44. In December of 2023, Plaintiff met with Principal Garza. At the meeting, Plaintiff was provided with a copy of UISD Title IX Notice of Alleged Sexual Harassment, dated November 29, 2023, along with a letter dated same day advising that Rullan had resigned from employment, prior to the completion of the district's investigation.

45. On December 12, 2023, Rodriguez contacted Plaintiff and advised that the investigation had concluded, and that Rullan was charged with three counts of criminal charges: (1) Sex Abuse of Child Continuous Victim Under 14, (2) Improper

7

Relationship Between Educator/Student, and (3) Indecency with a Child Sexual Contact.

46. On December 20, 2023, the UISD PD arrested Rullan. She received bail and was released later the same day.

47. On January 10, 2024, Plaintiff withdrew O.M. from AG Middle School as a result of the trauma of being within the school the sexual assault had occurred.

48. O.M. has been attending therapy to work on how to effectively process his emotions and engage in appropriate communicate without the need for lashing out.

49. To date, O.M. still attends counsel and suffers from severe emotional trauma and mental anguish.

50. Rullan has permanently damaged O.M. with her predatory behavior.

51. For nine months Rullan sexually abused a minor, forever traumatizing and his life forever.

52. O.M. has had thoughts of suicide, has suffered from intense emotional distress, resulting in his diagnosis of Major Depression Disorder.

53. As a result of Rullan's sexual abuse, O.M. has indulged in drug use, has been arrested and sentenced to probation, as well as a suspension from his current school district.

## CAUSES OF ACTION

### FIRST COUNT – VIOLATION OF TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972
### (Against UISD only)

54. Title IX of the Education Act Amendments of 1972 (20 U.S.C. § 1681) prohibits discrimination based on sex in educational institutions receiving federal funding. At all times relevant to this action, UISD was a public school receiving federal financial funding.

52. At all times relevant to this action, UISD was a public school receiving federal funding.

53. 34 CFR§106.44 provides that such institutions must respond affirmatively to when a school official with the ability to take corrective measures receives actual knowledge that a student may have been discriminated against on the basis of sex.

54. Defendant UISD failed to do a timely Title IX investigation as is required by federal law.

55. The sexual harassment that O.M.. endured at the hands of the offending teacher deeply traumatized O.M.

56. The trauma that O.M. experienced was compounded by the fact that O.M.. was required to see his assailant on the middle school campus day in and day out, throughout the duration of the assaults.

57. The sexual harassment that O.M. endured had such a negative effect on O.M.'s mental state that O.M. contemplated suicide.

58. The sexual harassment that O.M. endured had such a negative effect on O.M.'s mental state that O.M. began using drugs to numb the pain.

59. The sexual harassment that O.M. endured had such a negative effect on O.M.'s mental state that it effectively deprived O.M. of the educational benefits provided by UISD.

60. The trauma that O.M. experienced rendered him unable to enjoy the full benefits of his education.

61. Defendant UISD had actual knowledge of the ongoing sexual harassment of O.M.

62. Defendant UISD was required under federal laws to immediately initiate a Title IX investigation.

63. UISD acted with deliberate indifference regarding the sexual harassment in the following ways:

   a. Failing to complete an investigation immediately after being notified of a rumor between a student and a teacher;

   b. Failing to investigate why a student not registered to Rullan's class was behind closed doors with Rullan's alone after being viewed on school security footage.

c. Failing to immediate contact the police following the notification of the potential relationship between a student and teacher;

64. The actions of Defendant UISD in permitting and failing to timely curtail, prevent, or investigate the sexual harassment against O.M. and by allowing a hostile school environment constitutes a violation of Title IX.

65. Defendant UISD had, and has, the ability to exercise substantial control over both the assailant and the environment in which the sexual harassment and assault occurred.

66. The offending student's sexual harassment and assault were severe, pervasive, and objectively offensive.

67. Defendant UISD willfully avoided their time sensitive obligations under Title IX.

68. Defendant UISD was legally required under Title IX to immediately conduct a full and thorough investigation into the sexual harassment suffered by O.M.

69. As a result, O.M. was barred access to an equal opportunity to her education.

70. The emotional and physical harm that O.M. has suffered, and will continue to suffer, was caused directly and proximately by Defendant's unlawful conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendant and in favor of Plaintiff for actual damages for compensatory damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)   Grant such other and further relief as justice requires.

## SECOND COUNT – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. §1983

71.   42 U.S.C. §1983 prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

72.   The Fourteenth Amendment of the U.S. Constitution provides in pertinent part, that "no person shall be deprived of life, liberty, or property without the due process of law."

73.   Public school officials who fail to take adequate precautions may amount to "deliberate indifference to the constitutional rights of students." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

74. As such, Defendants violated O.M.'s right to bodily integrity by failing to take adequate precautions which amounted to deliberate indifference to his constitutional rights as a student.

75. Defendants were acting under the color of law.

76. Defendants as people working with children on a daily basis were aware that O.M. was entitled to a liberty interest in bodily integrity.

77. Plaintiff suffered bodily harm, including sexual assault and mental anguish.

78. As a direct and proximate result of Defendants' actions, O.M. suffered bodily harm.

79. Defendant UISD as a public school district is vicariously responsible for actions of employees acting within the scope of their employment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendant and in favor of Plaintiff for actual damages for financial loss, physical harm, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

    (c)    Grant such other and further relief as justice requires.

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 6, 2024

                                          Respectfully submitted,

                                          */s/ Keith Altman*
                                          Keith Altman, Esq.
                                          THE LAW OFFICE OF KEITH ALTMAN
                                          33228 West 12 Mile Road, Suite 375
                                          Farmington Hills, Michigan 48331
                                          Telephone: (248) 987-8929
                                          keithaltman@kaltmanlaw.com
                                          *Attorney for Plaintiff*