Case 5:24-cv-00155   Document 24   Filed on 11/07/25 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
November 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **CRYSTAL FLORES,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| V. § | | Civil Action No. 5:24-CV-00155 |
| § | | |
| **UNITED INDEPENDENT SCHOOL** § | | |
| **DISTRICT, et al.,** § | | |
| § | | |
| **Defendants.** § | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant United Independent School District's Motion to Dismiss. (Dkt. No. 10). Plaintiff has filed a Response, (Dkt. No. 16), and Defendant has filed a Reply, (Dkt. No. 17). As such, the motion is fully briefed.

### I. FACTUAL ALLEGATIONS

The Court takes all nonconclusory factual allegations in Plaintiff's Complaint, (Dkt. No. 1), as true for purposes of the motion to dismiss.[1] *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

In 2023, O.M., the son of Plaintiff Crystal Flores, was a student at Antonio Gonzalez Middle School, a school in the United Independent School District (the "District").[2] (Dkt. No. 1 at 3). Defendant Adriana Mariel Rullan was a teacher there, though she was not O.M.'s teacher. (*Id.* at 3, 10). On May 8, 2023, Rullan commenced a

---

[1] The District asks the Court to consider a document titled "UISD Police FFH (Local) Investigation Findings Summary," which it attached to its Reply, (Dkt. No. 17-1), after Flores referenced the document in her Response, (Dkt. No. 16 at 4). On a Rule 12(b)(6) motion, the Court may consider only the complaint, its attachments, and documents attached to a motion to dismiss that are central to the claims and referenced in the complaint. *See Baylor Scott & White Holdings v. Factory Mut. Ins. Co.*, 105 F.4th 816, 819 (5th Cir. 2024). Although some district courts have considered documents attached to a response, *see, e.g.*, *Phalanx Grp. Int'l v. Critical Sols. Int'l*, No. 3:18-CV-0244-B, 2019 WL 954727, at *3 (N.D. Tex. Feb. 26, 2019), doing so risks converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 (5th Cir. 1988). The Court declines to do so here and considers only the Complaint. However, it is noted that the document's substance does not alter the Court's analysis or conclusions herein.

[2] At one point in the Complaint, Flores incorrectly identifies the United Independent School District as the "Laredo Independent School District." (Dkt. No. 1 at 5). The Court understands this to be a typographical error and that the Laredo Independent School District plays no role in this case.

sexual relationship with O.M., a minor child. (*Id.* at 1, 3, 6). They had sexual intercourse in Rullan's classroom on multiple occasions. (*Id.*).

Flores and her husband became suspicious in early November, when O.M. began buying expensive things with an unknown source of income. (*Id.*). Later that month, Flores's husband confiscated O.M.'s phone, and they saw that Rullan had sent money to O.M. (*Id.* at 3–4). Upon further inspection, they discovered pictures of O.M. and Rullan together, as well as inappropriate photographs that Rullan had sent. (*Id.* at 4). Flores contacted Rullan on November 25, 2023. (*Id.*). Rullan identified herself as O.M.'s teacher; later, they met and Rullan denied having sexual intercourse with O.M. (Dkt. No. 1 at 4–5).

On November 27, 2023, Flores met with Antonio Gonzalez Middle School Principal Araceli Garza and told her about the sexual misconduct between O.M. and Rullan. (*Id.* at 5). By the next day, the United Independent School District[3] Police Department began their investigation. (*See id.* at 5). On November 28, Sargeant Rodriguez of the United Independent School District police department requested that Flores take O.M. to the Children's Advocacy Center of Laredo. (*Id.* at 5). There, O.M. confirmed Rullan had engaged in sexual intercourse with O.M. at least a dozen times while school was in session. (*Id.* at 6).

On November 29, Flores gave Principal Garza a recording of Flores's meeting with Rullan on November 25, and she also gave Principal Garza a copy of a letter written by Rullan, in which Rullan admitted to a nine-month relationship with O.M. (*Id.*). In December, Principal Garza gave Flores two documents: a copy of the "UISD Title IX Notice of Alleged Sexual Harassment" and a letter from the District stating that Rullan resigned prior to the completion of the investigation, both dated November 29, 2023. (*Id.* at 7). On December 12, 2023, Sargeant Rodriguez informed Flores that criminal charges had been brought against Rullan. (*Id.* at 7–8). Rullan's criminal case is ongoing. (Dkt. No. 16 at 17–18).

---

[3] Plaintiff references the Laredo Independent School District Police Department in paragraph 33 of the Complaint. (Dkt. No. 1 at 5). This is assumed to be a typographical error, since all other factual allegations made by Plaintiff indicate that O.M. was enrolled at the United Independent School District, and the Complaint is devoid of any other references to the Laredo I.S.D.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read together with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Int'l Energy Mgmt., LLC, v. United Energy Grp., Ltd.*, 818 F.3d 193, 201 n.15 (5th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Rule 12(b)(6) motions test the sufficiency of pleadings, not the merits of cases. *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020)).

Rule 12(b)(6) motions succeed only when the Court has accepted all well-pleaded facts as true, considered them in the light most favorable to the nonmovant, and concluded that they fail to state a facially plausible claim for relief. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plausibility need not meet a probability threshold but requires more than the mere possibility that a party acted unlawfully. *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 456 (5th Cir. 2023) (quoting *Iqbal*, 566 U.S. at 678). In short, claims are implausible when the alleged facts allow the Court to infer only the "mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citation modified). Courts assess plausibility using "judicial experience and common sense." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citation modified).

Although detailed factual allegations are unnecessary, laying a foundation for entitlement to relief "requires more than labels and conclusions." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555) (citing *Iqbal*, 556 U.S. at 678). For that reason, a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.*

### B. Title IX

Title IX of the Education Amendments of 1972 provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Under Title IX, sexual harassment is a form of discrimination. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999). Title IX provides a private right of action for individuals to sue educational institutions that receive federal funds. *See Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x. 949, 952 (5th Cir. 2015). Title IX conditions receipt of federal funds on a school's promise not to discriminate. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)). Tolerating teacher-on-student harassment violates that promise. *See id.*

For a public school district to be liable under Title IX, a plaintiff must plead facts sufficient to plausibly show that "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the abuse and (3) responded with deliberate indifference." *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 4 n.3 (5th Cir. 2007) (citing *Gebser*, 524 U.S. at 289-90 (1998)). The "deliberate indifference" standard in Title IX cases is a high one. *Doe on Behalf of Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). A deliberately indifferent response is one that is "clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D.*, 526 U.S. at 648.

Although Title IX obligates a school to prevent harassment, it stops short of imposing vicarious liability for an employee's wrongs. *Edgewood Indep. Sch. Dist.*, 964 F.3d at 365. Instead, school districts are liable "only for their own illegal acts." *See id.* (citation modified). To that end, "Title IX requires actual notice to an appropriate person and an opportunity for voluntary compliance." *Id.* at 258 (citation modified).

### III. DISCUSSION

#### A. Flores's Title IX Claim

##### 1. *School Official*

The first element of a Title IX claim requires the plaintiff to plead facts sufficient to plausibly show that a school district employee with supervisory authority over the abuser had actual notice of the abuse. *King*, 289 F. App'x at 4 n.3. Under Supreme Court and Fifth Circuit precedent, this means that a school official with "authority to take corrective action to end [the] . . . abuse of students" must have notice. *See Doe ex rel. Doe*

*v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000); *Gebser*, 524 U.S. at 290 ("An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination.").

The Fifth Circuit has on more than one occasion assumed without discussion that a principal was an appropriate person under Title IX. *See, e.g., Dall. Indep. Sch. Dist.*, 220 F.3d at 384 (5th Cir. 2000) (assuming that a principal was "an official with the power to remedy discrimination."); *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 776 (5th Cir. 2020) ("Plaintiffs must show that someone like [the] Assistant Principal . . . had the required knowledge."). For example, in *Rosa H. v. San Elizario Independent School District*, the Fifth Circuit held that a school district may be liable under Title IX for teacher-student sexual harassment only if a school official with actual knowledge of the abuse has both the authority to supervise the offending employee and the power to end the misconduct but fails to act. 106 F.3d 648, 660 (5th Cir. 1997). Further, the court clarified that this standard applies only to those employees the school board has expressly charged with overseeing other staff and empowered to remedy wrongdoing themselves. *Id.* As such, Title IX liability is limited to officials whose authority and control are sufficiently connected to the school board to reflect its own intentional discrimination. *Id.* In doing so, most employees, such as teachers, coaches, and janitors, are excluded unless the district has assigned them supervisory authority and the power to remedy the abuse. *Id.*

In the present case, Plaintiff named Antonio Gonzalez Middle School Principal Araceli Garza as the school official who was informed about the alleged abuse against her son. (Dkt. No. 1 at 5). The Court finds that Plaintiff properly named Principal Garza as an appropriate school official because she had "supervisory power" and is "invested by the school board with the duty to supervise the employee." *Doe v. Katy Indep. Sch. Dist.*, 427 F. Supp. 3d 870, 878 (S.D. Tex 2019) (quoting *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 983 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015)).

Additionally, the Court finds that Principal Garza had the power to take action to end the abuse. *Katy Indep. Sch. Dist.*, 427 F. Supp. at 878. According to Flores's complaint, Garza appears to have initiated the Title IX investigation and played some

role in the investigatory process. (*See* Dkt. No. 1 at 5). Similarly, no factual allegations in Flores's complaint suggest that Garza lacked any of the authority that federal courts usually impute to principals. *See E.M. ex rel. J.M. v. Austin Indep. Sch. Dist.*, No. A-17-CA-387 LY, 2018 WL 627391, at *6 n.5 (W.D. Tex. Jan. 30, 2018) (collecting cases holding that a principal is an "appropriate person" under Title IX), *aff'd*, 770 F. App'x 712 (5th Cir. 2019). As such, the Court finds that Principal Garza was an appropriate employee with supervisory authority over the abuser under Title IX.

### 2. *Actual Notice*

The Court next considers whether Flores properly alleged that Gonzalez had actual notice of the harassment. A school district via a school official has actual notice when it "actually knew that there was a substantial risk that sexual abuse would occur," or knew that actual abuse was occurring. *Alvin Indep. Sch. Dist.*, 840 F. App'x at 775 (citation modified) (quoting *Rosa H.*, 106 F.3d at 652–53). Merely showing that a school "should have known there was a substantial risk of abuse" is insufficient. *Id.* Nor will it suffice that "any employee knew of the harassment; it must be someone authorized to rectify it." *Id.* (citation modified).

In this case, the District concedes that it had actual knowledge as of November 27, 2023, the date that Flores reported the harassment to Principal Garza. (Dkt. Nos. 1 at 5; 10 at 6). The parties do, however, dispute whether Flores has alleged that the District had actual knowledge *before* November 27. (*See* Dkt. Nos. 10 at 5–6; 16 at 9–11). Flores asserts that the District "had actual knowledge of the ongoing sexual harassment" before November. (*See* Dkt. 1 at 10). She also alludes to a "rumor" that Rullan and O.M. were having sex. (*Id.*). Beyond those assertions, however, she provides no facts from which the Court could plausibly infer that Principal Garza knew about the harassment before Flores reported it to her on November 27. Even though a plaintiff's allegations are usually taken as written, "conclusory assertions . . . do not qualify as well-pled factual allegations." *Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023) (quoting *Twombly*, 550 U.S. at 555). Because there can be no doubt that Flores's assertion, unsupported by facts, is conclusory, the Court cannot consider it. *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

However, Flores does identify one person who knew about the harassment when it began: Rullan. (Dkt. No. 1 at 10–11). Deciding whether Rullan violated any mandatory reporting laws, as Flores suggests, is beyond the scope of the motion before the Court. (*See id.*). But the Court examines the issue to the extent that Flores implies that the District had actual knowledge because Rullan, an employee, knew of the abuse she was committing. (*See id.*). Here, the law is settled: a harasser's actual knowledge is insufficient to establish liability under Title IX. *Edgewood*, 964 F.3d at 964 n.46 (quoting *Gebser*, 524 U.S. at 291) (citation omitted). Rullan's actual knowledge is thus irrelevant to Flores's Title IX claim. As such, without any allegations that someone other than Rullan knew about the harassment before Principal Garza, the Court must conclude that Flores' pleading establishes that the District had actual knowledge beginning on November 27, 2023, and not before.

### 3. *Deliberate Indifference*

The final inquiry under Title IX is whether Flores has sufficiently pleaded that the District's response to the allegations of student sexual abuse amounted to deliberate indifference. *See Edgewood*, 964 F.3d at 359 (quoting *Gebser*, 524 U.S. at 290). To meet this standard, a plaintiff must show that a school district's response was "clearly unreasonable in light of the known circumstances." *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)). Courts will "afford broad deference to school officials," recognizing that they are ill-equipped to "second-guess the disciplinary decisions made by school administrators." *Id.* (citation modified). Negligent or unreasonable responses—even those that fail to stop the harassment—will not meet this "extremely high standard." *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *5 (5th Cir. Feb. 4, 2022) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). As a result, liability cannot attach unless a school district ignores the harassment or responds with pro forma measures only. *Cf. Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 364 (5th Cir. 2022) (quoting *Estate of*

*Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 989 (5th Cir. 2014)) (Title VII case).[4] Simply put, the school district's response or lack thereof must constitute "an official decision . . . not to remedy the violation." *Cypress-Fairbanks*, 53 F.4th at 341. Here, Plaintiff identifies three bases in her allegation that the District responded with deliberate indifference. The Court addresses each in turn.

### a. Waiting a Day to Begin Investigating Flores's Report

First, Flores asserts that the District failed "to complete an investigation immediately after being notified of a rumor between a student and teacher." (Dkt. No. 1 at 10). As noted above, the Complaint establishes that the District gained actual knowledge on November 27, 2023, when Flores told Principal Garza about the the allegations of sexual abuse. (*Id.* at 5). By the next day, the District police began their investigation. (*Id.* at 5–6). As such, the question for the Court is whether the delay between Flores's report and the investigation constitutes deliberate indifference.

In some cases, "a delay in instituting remedial actions may constitute deliberate indifference under Title IX." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 376 (5th Cir. 2019) (citing *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669–70 (2d Cir. 2012); *Matthews v. Nwankwo*, 36 F. Supp. 3d 718, 725 (N.D. Miss. 2014)). But the Fifth Circuit has held that a delay of less than one day is not clearly unreasonable. *See Ruvalcaba*, 2022 WL 340592, at *5. In *Ruvalcaba v. Angleton Independent School District*, Yasmin Ruvalcaba, a ninth grader, sued the Angleton Independent School District after a classmate orally raped her. *Id.* at *1–2. On appeal, Ruvalcaba argued that a jury could find that the Angleton Independent School District was deliberately indifferent in handling her sexual-assault complaint. *Id.* at *5. The Fifth Circuit disagreed and affirmed the district court's ruling, holding that the investigation "was not so obviously inadequate as to constitute deliberate indifference." *Id.* at *5–6. It noted that administrators had reported Ruvalcaba's assault allegation to the school district police "within a day of learning of it," and that the police conducted a "several-months-long investigation," including interviews with witnesses and the victim. *Id.*

---

[4] "Case law around Title VII guides interpretation of Title IX." *Alva v. Texas A&M Int'l Univ.*, No. 5:17-CV-144, 2018 WL 5634983, at *4 (S.D. Tex. Oct. 31, 2018) ( quoting *Cummings v. Tex. S. Univ.*, No. H–10–1096, 2011 WL 1750697, at *3 (S.D. Tex. May 6, 2011)).

In other cases, the Fifth Circuit has held that longer delays in investigating were also not clearly unreasonable. For example, in *I.F.*, a ninth grader brought multiple Title IX claims against the Lewisville Independent School District. *I.F.*, 915 F.3d at 367–68. In that case, I.F., a high school student, claimed she was raped by two boys at a party. *Id.* at 364. Soon, other students began bullying I.F. about her sexual history. *Id.* I.F.'s parents reported the assault and harassment to school officials and the police in mid-October. *Id.* at 364–65. While the police investigated the assault, they requested that school officials postpone their separate investigation. *Id.* at 365. During this time, I.F. stopped attending school, but administrators ensured that she could continue her schooling at home. *Id.* The parties in *I.F.* disputed when police allowed school officials to begin an investigation, but it was either in early November or mid-December. *Id.* at 366. Ultimately, school officials waited until after winter break to begin investigating. *Id.* They interviewed more than dozen students, some more than once, and submitted a report in early April. *Id.* at 367.

There, the district court granted summary judgment for the Lewisville Independent School District, holding that its response to I.F.'s allegations was not deliberately indifferent. *Id.* at 368, 378. The Fifth Circuit affirmed the district court judgment. *Id.* at 378.

As in *Ruvalcaba*,[5] the District contacted law enforcement within a day of learning of the alleged abuse and promptly initiated an investigation. Even if the District delayed longer, its response would still fall within the bounds of reasonableness under Fifth Circuit precedent. By November 29, Rullan had resigned, eliminating any ongoing risk of further abuse, and there is no allegation that Rullan committed any harassing conduct between November 27 and November 29. The remaining task was to conduct the investigation itself, which proceeded contemporaneously with a police inquiry.

In short, Title IX does not demand an "immediate" response to every report of harassment—it merely requires a response that is not clearly unreasonable given the circumstances. *Cypress-Fairbanks*, 53 F.4th at 341. A one-day delay in beginning an

---

[5] Although both *I.F.* and *Ruvalcaba* involved student-on-student harassment, the same deliberate-indifference standard applies to teacher-on-student harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).

investigation, as factually alleged in this case, does not meet that demanding standard. Accordingly, Flores has not plausibly alleged deliberate indifference on the basis that the District failed to investigate "immediately" after Principal Garza learned of the abuse.

### b. Security footage showing O.M. entering Rullan's classroom

Next, Flores asserts that the District was deliberately indifferent because it "[f]ail[ed] to investigate why a student not registered to Rullan's class was behind closed doors with Rullan's [sic] alone after being viewed on school security footage." (Dkt. No. 1 at 10). Flores does not allege that the video footage would show Rullan engaging in sexually inappropriate conduct with O.M, but only that O.M. was meeting with Rullan alone. To be sure, a failure to investigate security footage showing sexual abuse would constitute deliberate indifference if an appropriate person saw it. *See Rosa H.*, 106 F.32d at 659. However, Flores's allegations fall short of establishing that an appropriate person had actual knowledge of sexual harassment before November 27, 2023.

Plaintiffs cannot "circumvent Title IX's exacting standards by pointing to an official's constructive knowledge of red flags." *J.T. v. Uplift Educ.*, No. 23-10773, 2024 WL 5118486, at *4 (5th Cir. Dec. 16, 2024) (per curiam) (citation modified). Even when there are "red flags that should have alerted the district of a substantial risk of sexual abuse, the law requires that the district actually knew of the risk, not just that it should have known." *Id.* (citation modified). As such, the relevant question is not whether the District could or even should have known about Rullan's misconduct, but whether it actually knew. *See id.*

In *J.T. v. Uplift Education*, a parent of a kindergarten student sued a charter school network under Title IX, alleging that a kindergarten teacher sexually assaulted multiple students, including the plaintiff's daughter. *Id.* at *1–2. There, the Fifth Circuit affirmed the district court's grant of summary judgment for Uplift Education and held that although it is "an unfortunate reality that abuse occurs in a range of otherwise harmless settings," such as an empty classroom, "a school cannot be held liable for its failure to notice every setting an abuser might use to prey on children." *Id.* at *4.

In *M.E. v. Alvin Independent School District*, the Fifth Circuit also held that unless an appropriate school official knows that something "of a sexual nature might be occurring" between an employee and a student, knowledge of a "close—likely

inappropriately close—relationship" will not suffice. 840 Fed. App'x at 776. There, the plaintiff sued the Alvin Independent School District after a school police officer raped the plaintiff's daughter more than twenty times. *Id.* at 774–75. On appeal from a grant of summary judgment for the school district, the Fifth Circuit stated that although the behavior "should have raised the administration's suspicions," it nevertheless "fell short of putting them on notice of 'a substantial risk" for sexual abuse." *Id.* at 776 (quoting *Rosa H.*, 106 F.3d at 652–53) (citing *Doe v. Northside I.S.D.*, 884 F. Supp. 2d 485, 493 (W.D. Tex. 2012)). Despite unusual behavior reflecting a close relationship between a school police officer and a student, no one suspected sexual abuse until the student's parent found sexually explicit text messages on his daughter's phone. *M.E.*, 840 Fed. App'x at 774–76. As such, the Fifth Circuit concluded that actual knowledge "of a substantial risk that [the officer] was sexually assaulting [plaintiff's daughter]" was absent. *Id.* at 776.

In the present case, even if the District's administrators knew that O.M. was visiting Rullan's classroom—and the facts alleged by Flores do not suggest they did—it would not establish actual notice of a substantial risk of sexual abuse. Just as the teacher in *J.T.* could have been using the dim lighting, videos, and privacy folders "for a range of appropriate reasons," so too could O.M. have been visiting Rullan for valid reasons. *J.T.*, 2024 WL 5118486, at *4. But even if one can think of no legitimate reason for O.M. to visit Rullan, that would not, alone, constitute actual notice of sexual abuse. In *M.E.*, the administration learned that the school police officer had met one-on-one with M.E. for no apparent reason. *Id.* at 774. Despite knowing that the officer and plaintiff's daughter were inappropriately close, the administration still lacked actual notice based on that meeting alone. *See id.* at 774–76. Similarly, like plaintiff's daughter in the school police officer's office in *M.E.*, even if O.M. had no reason to be in Rullan's classroom, the District would still lack the requisite actual knowledge. And without actual knowledge, the District could not have responded with deliberate indifference. As such, this argument fails.

### c. Failure to Immediately Contact the Police After Reporting Abuse

Finally, Flores asserts that the District was deliberately indifferent for "[f]ailing to immediate [sic] contact the police following the notification of the potential relationship between a student and teacher." (Dkt. No. 1 at 11). This is a variation of Flores's argument that the District unreasonably delayed its investigation. Here, she contends that the District delayed contacting the police. (*See id.* at 10–11).

As noted above, the Court has found that Flores has properly alleged the District had actual knowledge on November 27, 2023, but not earlier. By the following day, the United Independent School District Police Department had begun investigating. At most, one day passed between Flores's meeting with Principal Garza and the District contacting the police. Again, the question for the Court is whether that delay may constitute deliberate indifference.

Delays in investigating or disciplining sexual harassers can, under certain circumstances, "constitute deliberate indifference under Title IX." *I.F.*, 915 F.3d at 376. Even still, courts should be reluctant to "second-guess the disciplinary decisions made by school administrators." *Cypress-Fairbanks*, 53 F.4th at 341. Instead, they should give "broad deference to school officials." *Id.* (citation modified). Any response is acceptable unless it is "clearly unreasonable in light of the known circumstances." *Cypress-Fairbanks*, 53 F.4th at 341. For the same reasons discussed previously, the Court finds that the one-day delay pleaded by Flores does not support deliberate indifference as an element of a cause of action for a Title IX violation.

For the foregoing reasons, Flores has failed to state a claim under Title IX. Her Title IX claims are thus dismissed. Because the Court will dismiss Flores's Title IX claims, it will not reach the issues of the scope of Title IX damages.

### B. Section 1983 *Monell* Claim

The Civil Rights Act of 1871, now codified in part as 42 U.S.C. § 1983, creates a private right of action against state officials for civil-rights violations. It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

>liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983

In *Monell v. New York City Department of Social Services*, the Supreme Court held that municipalities and other local governmental agencies are "persons" under § 1983. 436 U.S. 658, 690 (1978).[6] However, as under Title IX, local government units are only liable for their own illegal acts. *See Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). As such, *Monell* claims cannot be based on vicarious liability. *Verastique v. City of Dall.*, 106 F.4th 427, 435–36 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 772 (2024). So, "[t]o hold city or municipality liable for the actions of its officers, a plaintiff must demonstrate (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Clark v. City of Alexandria*, 116 F.4th 472, 487–88 (5th Cir. 2024).

At this stage of litigation, Flores need not allege "the specific identity of the policymaker," which "is a legal question that need not be pled." *Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016). Instead, she need only "allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality [or local government unit] is said to be liable." *Benfer v. City of Baytown*, 120 F.4th 1272, 1285–86 (5th Cir. 2024) (citation modified).

One way to show an official policy is through "written policy statements, ordinances, or regulations." *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022) (quoting *Webb v. Town of St. Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019)). By that definition, Flores has failed to identify anything approaching an official policy. But that failure is not necessarily fatal. Municipalities can be liable "in the absence of an official policy if there is an employee practice that is so wide-spread and common that it constitutes a custom representing the policies of the municipality." *Benfer*, 120 F.4th at at 1286 (citing *Piotrowski*, 237 F.3d at 581). But establishing a custom is difficult. *See id.* To do so, Flores must show "a pattern of abuses that transcends the error made in a single case." *Id.* (quoting *Piotrowski*, 237 F.3d at 581). She must allege "sufficiently

---

[6] Appropriately, § 1983 claims against local governments are often called "*Monell*" claims. *Macias v. Bexar Cnty.*, No. 24-50603, 2025 WL 1604513, at *3 n.1 (5th Cir. June 6, 2025).

numerous prior incidents rather than merely isolated instances." *Id.* (citation modified). Merely "describ[ing] the incident that gave rise to [the] injury" at issue is insufficient. *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). Additionally, prior incidents cannot "simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id.* (quoting *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017)). Of course, municipalities rarely maintain facially unconstitutional practices. Yet "even a facially innocuous [custom] will support liability if it was [maintained] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)).

Flores asserts that the District "had a policy or custom in place that allowed for a student that was not a student of Defendant Rullan to find himself in her classroom on over a dozen occasions to be sexual[ly] assaulted." (Dkt. No. 16 at 10). Because she has not identified any official statements from a policymaker, Flores must show a custom. *See Benfer*, 120 F.4th at 1286. But she fails at the outset. Other than the instances when O.M. was alone in a classroom with Rullan, Flores has not alleged a single previous instance where a student was alone in the classroom of a teacher to whom the student was not assigned. Instead, she only "describe[s] the incident that gave rise to [the] injury," namely Rullan's abuse of O.M., which is insufficient to establish a custom. *See Peña*, 879 F.3d at 622. Without any allegations of other incidents, Flores falls far short of showing a "wide-spread and common" practice that "represent[s] the policies of" the District. *Benfer*, 120 F.4th at 1286. Even if Flores identified more incidents of students and teachers being alone in classrooms, her *Monell* claim would fail because the Court cannot say that sexual abuse is a "known or obvious consequence" of allowing students and teachers to meet in empty classrooms. *Piotrowski*, 237 F.3d at 579.

As an example, another district court has addressed and dismissed this theory of *Monell* liability. In *Doe v. Snap, Inc.*, John Doe sued the Conroe Independent School District after a teacher sexually assaulted him. No. CV H-22-590, 2022 WL 16635370, at *1 (S.D. Tex. Nov. 2, 2022). The teacher met with and groomed Doe in an empty classroom with the door closed. *Id.* On a motion to dismiss, the court held that it was "not so obvious that a teacher who is alone with a student of the opposite sex will sexually assault that

student . . . ." *Id.* at *6 (citation modified). Further, it held that Doe had failed to allege facts showing that the closed-door custom caused Doe's assault. *Id.*

Like the court in *Snap*, the Court here cannot say that sexual assault was a "known or obvious" consequence of allowing teachers and students to be alone in classrooms. *Piotrowski*, 237 F.3d at 579. The Court cannot infer that teachers are more likely to commit sexual assault when alone with students of the opposite sex. So, the Court is not inclined to reach a different conclusion about whether such situations cause sexual assault. Indeed, Flores has failed to allege any facts that would support the conclusion that the alleged custom caused O.M.'s assault. In the end, Flores makes statements but provides no facts on which to ground them. For that reason, her arguments fail.

Flores does not, however, base her *Monell* claim solely on the practice of allowing teachers to have closed-door meetings with students in empty classrooms. She also asserts that the District "failed to supervise its faculty or students" and that it "does not . . . train it's [sic] employees to react and report . . . incidents of sexual assault." (Dkt. No. 16 at 15). "Failure-to-train" and "failure-to-supervise" actions are another type of *Monell* claim. *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). Under "limited circumstances," a school district's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Hicks-Fields*, 860 F.3d at 811 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). However, failure to train is "a notoriously difficult theory on which to base a *Monell* claim." *Allen v. Hays*, 65 F.4th 736, 750 (5th Cir. 2023) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Failure to train claims comprise three elements: "(1) the supervisor either failed to supervise or train the [employee]; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017)). It requires specific allegations of how "a particular training [or supervision] program is defective." *Benfer*, 120 F.4th at 1287 (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)); *see also Trammell v. Fruge*, 868 F.3d 332, 344 n.11 (5th Cir.

2017) (stating that failure-to-supervise claims are evaluated in the same way as failure-to-train claims). And because such claims require deliberate indifference, "to succeed on a claim of failure to train or supervise, the plaintiff usually must demonstrate 'a pattern of violations.'" *Moreno v. Aransas Cnty. Sheriff's Off.*, No. 2:23-CV-00213, 2024 WL 3926962, at *7 (S.D. Tex. Feb. 16, 2024) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)), *report and recommendation adopted sub nom. Moreno v. Mills*, No. 2:23-CV-00213, 2024 WL 3929889 (S.D. Tex. Aug. 22, 2024).

Flores's failure-to-train allegation is asserted for the first time in her response to the motion to dismiss. In general, "allegations . . . raised for the first time in a response to a motion to dismiss are not properly before the Court." *Roe v. U.S. Dep't of Homeland Sec.*, No. 3:19-cv-2595, 2020 WL 4456528, at *3 n.3 (N.D. Tex. July 13, 2020) (collecting cases). But even addressing the substance of this *Monell* theory of liability, the Court still cannot say it adequately presents a causal link between the District's conduct and O.M.'s abuse. Flores does not plead factually that a District employee discovered or was made aware of the abuse but failed to report it. There is no causal link between this particular failure-to-train and O.M.'s assault. So, it fails the second prong for a failure-to-train claim under *Monell*. *See Armstrong*, 60 F.4th at 277.

Flores also claims that the District "failed to supervise its faculty or students." (Dkt. No. 16 at 10). Alone, this claim is insufficiently specific. *See Armstrong*, 60 F.4th at 277. And, again, it is presented for the first time in the response and so is not properly before the Court. *Roe,* 2020 WL 4456528, at *3 n.3. But, nevertheless, even if were properly before the Court, it would fail. In alleging a failure to supervise, Flores appears to refer to the District's failure to monitor security cameras that would have shown O.M. entering Rullan's classroom. (Dkt. No. 16 at 5–6). Again, there is no logical connection between seeing O.M. entering Rullan's classroom and drawing the conclusion that sexual abuse was taking place. Cameras in the hallway would not show sexual assault in the classroom. Arguing that constantly monitoring the cameras would have caused someone to investigate the matter would be unavailing because like the court in *Snap*, this Court is not convinced that it is "so obvious that a teacher who is alone with a student of the opposite sex will sexually assault that student" such that a video showing O.M. entering

a classroom would have caused another employee to intervene. 2022 WL 16635370, at *6. In any event, monitoring cameras alone would be unlikely to have prevented the assault. As reflected by the factual scenario presented in *J.T. v. Uplift Education*, even the presence of other students in the classroom or passersby in the hallway can be insufficient to curb sexual abuse. *See* 2024 WL 5118486, at *2–4. In light of this precedent and its own analysis, the Court cannot say that Flores has established a causal link between the District's failure to monitor its cameras and O.M.'s abuse. Here, too, Flores's claim fails the second prong of the failure-to-supervise test. *See Armstrong*, 60 F.4th at 277.

For the foregoing reasons, Flores has failed to a state a claim for *Monell* liability under § 1983. Her § 1983 claims are thus dismissed.

## IV. CONCLUSION

Based on the foregoing, Defendant United Independent School District's Motion to Dismiss, (Dkt. No. 10), is **GRANTED** in its entirety. Plaintiff's claims against Defendant United Independent School District are **DISMISSED WITHOUT PREJUDICE**.

In Plaintiff's Response to the motion, she asks the Court for leave to file an amended complaint in the event the motion to dismiss is granted. (Dkt. No. 16 at 18). A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, a court should liberally allow parties to amend pleadings. See *Stem v. Gomez*, 813 F.3d 205, 216 (5th Cir. 2016). Since Plaintiff has not yet filed an amended complaint, the Court **GRANTS** Plaintiff leave to file an amended complaint no later than **November 21, 2025**. In the event Plaintiff does not file an amended complaint by the deadline, Plaintiff's claims will be dismissed with prejudice.

It is so **ORDERED**.

**SIGNED** November 7, 2025.

_____
John A. Kazen
United States District Judge